UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STELLA GONZALES,<br><br>           Plaintiff,<br><br>    v.<br><br>LOWES, et al.,<br><br>           Defendants. | No. 2:22-cv-01436-DC-CSK<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS AND STAYING ALL PROCEEDINGS PENDING COMPLETION OF ARBITRATION<br><br>(Doc. No. 11) |

This matter is before the court on Defendants' motion to compel arbitration of Plaintiff's claims. (Doc. No. 11.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 14.) For the reasons explained below, the court will grant Defendants' motion to compel arbitration and stay all proceedings pending completion of arbitration.

**BACKGROUND**

On May 27, 2022, Plaintiff Stella Gonzales filed a first amended complaint against Defendants Lowes and Lowes Home Centers (collectively, "Defendants") in Sacramento County

/////

/////

/////

1

Superior Court.[1] (Doc. No. 1-1 at 8–21.) Plaintiff alleges she worked as a cashier for Defendant Lowe's LLC in Rancho Cordova, California from approximately February 2011 through March 2020, when she was terminated. (*Id.* at 9, 11.) Plaintiff asserts four claims under the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12900, *et seq.*: (1) employment discrimination because of physical disability, (2) employment discrimination because of medical condition, (3) retaliation, and (4) denial of reasonable accommodation. (*Id.* at 13–20.) On August 12, 2022, Defendants removed the action to this federal district court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1441(b). (Doc. No. 1 at 7.)

On September 16, 2022, Defendants filed the pending motion to compel arbitration of Plaintiff's claims and to stay all proceedings pending completion of arbitration. (Doc. No. 11.) Defendants assert Plaintiff agreed to arbitrate any claims against her former employer, Defendant Lowe's LLC, on two occasions. (Doc. No. 11 at 9.) On March 21, 2016, Plaintiff was promoted to head cashier based "upon her acceptance of certain enumerated terms and completion of certain tasks, including an [a]rbitration [a]greement." (*Id.*; *see also* Doc. No. 11-2.) About a year later, on May 3, 2017, Plaintiff electronically signed an updated arbitration agreement (hereinafter, "Arbitration Agreement"). (Doc. Nos. 11 at 9–10; 11-3.) The Arbitration Agreement states as follows:

> In exchange for the mutual promises in this Agreement in addition to your continued employment by Lowe's Home Centers, LLC and its successors or assigns (hereinafter "Lowe's"), which you hereby accept, you and Lowe's agree that any controversy between you and Lowe's (including agents of Lowe's and Lowe's predecessor Lowe's HIW, Inc.), arising out of your employment or the termination of your employment shall be settled by binding arbitration (at the insistence of either you or Lowe's) conducted by a single arbitrator under the current applicable rules, procedures and protocols of JAMS, Inc. ("JAMS") or the American Arbitration Association ("AAA"), as may be amended from time to time.

---

[1] According to Defendants, Plaintiff named the Defendant entities incorrectly in her first amended complaint, and their correct names are Lowe's Companies, Inc. (which was erroneously sued as "Lowes") and Lowe's Home Centers, LLC (which was erroneously sued as "Lowes Home Centers"). (*See* Doc. Nos. 1 at 7; 11 at 2.) To avoid confusion, the court will refer to the first defendant as Lowe's Inc. and the second defendant as Lowe's LLC in this order.

(Doc. No. 11-3 at 2.) The Arbitration Agreement further states "[y]ou may submit a form stating that you wish to opt-out and not be subject to this [a]greement [t]o [a]rbitrate [d]isputes . . . [i]f you opt-out, you will not be subject to any adverse or negative employment action as a consequence of that decision and may pursue available legal remedies . . . ." (*Id.* at 3.) An opt-out form was included with the Arbitration Agreement. (*Id.* at 5.)

On October 6, 2022, Plaintiff filed her opposition to Defendants' motion to compel arbitration. (Doc. No. 16.) Plaintiff acknowledges she signed the Arbitration Agreement on May 3, 2017, but asserts the Arbitration Agreement is unconscionable and therefore unenforceable. (Doc. Nos. 16 at 6, 8–15; 18 at 1.) On October 17, 2022, Defendants filed their reply thereto. (Doc. No. 19.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a national policy favoring arbitration when [] parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). For this reason, a court's role in considering a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the court answers both questions in the affirmative, it must 'enforce the arbitration agreement in accordance with its terms.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020)). A defendant seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022).

1    Here, the only issue before the court is whether a valid agreement to arbitrate exists
2 because Plaintiff does not contest that the Arbitration Agreement encompasses her claims. "When
3 determining whether a valid contract to arbitrate exists, [federal courts] apply ordinary state law
4 principles that govern contract formation." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th
5 Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir.
6 2002)). Arbitration agreements may be invalidated by generally applicable contract defenses,
7 such as fraud, duress, or unconscionability. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,
8 339 (2011). "The party asserting a defense to the enforceability of an arbitration agreement has
9 the burden of proving that defense by a preponderance of the evidence." *Melez v. Kaiser Found.*
10 *Hosps., Inc.*, No. 2:14-cv-08772-CAS-VBK, 2015 WL 898455, at *3 (C.D. Cal. Mar. 2, 2015)
11 (citing *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 972 (1997)).

## ANALYSIS

13    Defendants seek to compel Plaintiff to arbitrate her claims pursuant to the terms of the
14 Arbitration Agreement and to stay this action pending the completion of arbitration. (Doc. No.
15 11.) Plaintiff does not contest that her claims would be subject to arbitration if the court finds the
16 Arbitration Agreement valid. (Doc. No. 16.) Plaintiff only challenges the validity of the
17 Arbitration Agreement, arguing the Arbitration Agreement is unconscionable. (*Id.*)
18    Under California law, a court may refuse to enforce a provision of a contract if it
19 determines that the provision was unconscionable at the time it was made. Cal. Civ. Code
20 § 1670.5(a); *see also Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (an
21 arbitration agreement may be deemed invalid on grounds of unconscionability). A "contract is
22 unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and
23 the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v.*
24 *Kho*, 8 Cal. 5th 111, 125 (2019). An agreement to arbitrate is unconscionable only if it is both
25 procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs.,*
26 *Inc.*, 24 Cal. 4th 83, 114 (2000). "Procedural unconscionability concerns the manner in which the
27 contract was negotiated and the respective circumstances of the parties at that time, focusing on
28 the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery*

*Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO*, 8 Cal. 5th at 125.

When analyzing procedural unconscionability, the court begins by determining whether the agreement is a contract of adhesion. *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1115 (E.D. Cal. 2023). Generally, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 242 (2015) (quotation omitted). An arbitration agreement that is a "'take it or leave it' employment condition, without more, is procedurally unconscionable." *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114 (2004) (citations omitted). The Ninth Circuit has held that an arbitration agreement is not a contract of adhesion if there is an opportunity to opt-out of it. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *see also Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002) (opt-out provision prevented an arbitration agreement from being a contract of adhesion and supported enforceability of the agreement). "If a contract of adhesion is at issue, courts must assess whether the circumstances of the contract's formation created such oppression or surprise that closer scrutiny of the contract's overall fairness is required." *Zamudio*, 733 F. Supp. 3d 931, 943 (E.D. Cal. 2024) (citing *OTO*, 8 Cal. 5th at 126).

Here, Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because it is a contract of adhesion. (Doc. No. 16 at 8–9.) Plaintiff argues the Arbitration Agreement was signed as a condition of her employment and as her employer, Defendant Lowe's LLC had "superior bargaining power." (*Id.* at 9.) Plaintiff acknowledges the Arbitration Agreement includes an opt-out clause but argues "the clause is buried in the contract long after informing [Plaintiff] that the agreement is a condition of employment." (*Id.* at 9.) Finally, in a declaration submitted alongside her opposition to Defendants' pending motion, Plaintiff asserts she was "unaware of what [her] employer was having [her] sign in terms of arbitration." (Doc. No. 18 at 2.)

5

Defendants argue the Arbitration Agreement is not procedurally unconscionable because Plaintiff cannot claim oppression or surprise due to unequal bargaining power for three reasons. (Doc. No. 19 at 3–4.) First, the Arbitration Agreement was a standalone document that clearly stated Plaintiff agreed to arbitrate all claims against Defendant Lowe's LLC and its agents. (*Id.* at 3.) Second, Plaintiff had an opportunity to opt-out of the agreement within 30 days and was provided an opt-out form as a standalone document. (*Id.*; *see also* Doc. Nos. 11 at 22; 11-3 at 3.) Third, Plaintiff was informed that she would "not be subject to any adverse or negative employment action" if she chose not to sign the Arbitration Agreement. (Doc. No. 19 at 4.)

The court agrees with Defendants and finds the Arbitration Agreement was not a "take-it or leave-it" contract of adhesion because Plaintiff had a meaningful opportunity to opt-out of the Arbitration Agreement within 30 days. *See Mohamed*, 848 F.3d at 1211; *Ahmed*, 283 F.3d at 1199 (plaintiff was "not presented with a contract of adhesion because he was given the opportunity to opt out of the [] arbitration program by mailing in a simple one-page form"). Specifically, the Arbitration Agreement provided that Plaintiff "may submit a form stating that [she] wish[es] to opt-out" via email, "within 30 days." (Doc. No. 11-3 at 3.) The Arbitration Agreement further notified Plaintiff that she would "not be subject to any adverse or negative employment action as a consequence of [her] decision" to opt-out. (*Id.*) Finally, the Arbitration Agreement included the opt-out form as a standalone document. (*Id.* at 5.)

Apart from its non-adhesive nature, the Arbitration Agreement also lacks any other indicia of procedural unconscionability. *See Ahmed*, 283 F.3d at 1199 (considering "any other indicia of procedural unconscionability" after concluding arbitration agreement was not a contract of adhesion). The terms of the Arbitration Agreement were not buried in small font within a larger document, they were clearly spelled out in a standalone two-page document. (Doc. No. 11-3 at 3); *see Nat'l Bank of Cal., NA v. Gay*, No. 2:11-cv-2521-RSWL-JCG, 2011 WL 2672359, at *3 (C.D. Cal. June 29, 2011) (there was no element of surprise where an arbitration agreement was "not hidden or difficult to read, as it was contained in a stand-alone, three-page document"). Moreover, the Arbitration Agreement contained a bolded section describing Plaintiff's opt-out rights, the 30-day deadline to do so, instructions on how to opt-out, and the consequences of

6

choosing not to opt-out. (Doc. No. 11-3 at 3); *see Rubio v. Aaron's LLC*, No. 1:24-cv-00526-KES-BAM, 2024 WL 4904512, at *6–7 (E.D. Cal. Nov. 27, 2024) (arbitration agreement was not procedurally unconscionable where it was "not hidden," "was a freestanding five-page document," and contained an opt-out provision in a "bolded section setting out [plaintiff's] opt-out rights and [a] 30-day deadline to do so, with instructions on how to opt-out and a clickable link to the opt-out form."). Although Plaintiff asserts she was unaware of the Arbitration Agreement's terms, "the general rule is that 'one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument.'" *Ahmed*, 283 F.3d at 1199 (quoting *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976)).

For these reasons, the court concludes Plaintiff has not met her burden to prove the Arbitration Agreement is procedurally unconscionable. *See Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1059 (9th Cir. 2020) ("The party opposing arbitration bears the burden of establishing that an arbitration agreement is unconscionable."). Plaintiff's failure to show procedural unconscionability forecloses her unconscionability defense under California law, which requires both procedural and substantive unconscionability. *See Armendariz*, 24 Cal. 4th at 114; *Rubio*, 2024 WL 4904512, at *7 ("As the arbitration agreement is not procedurally unconscionable, the [c]ourt need not address the issue of substantive unconscionability."); *Prizler v. Charter Commc'ns, LLC*, No. 3:18-cv-1724-L-MSB, 2019 WL 2269974, at *4 (S.D. Cal. May 28, 2019) (declining to analyze substantive unconscionability where there was no procedural unconscionability because employee had an opportunity to opt-out of arbitration agreement).

Having concluded that the Arbitration Agreement is not unconscionable, the court must "enforce the arbitration agreement in accordance with its terms." *Johnson*, 57 F.4th at 680–81. The terms of the Arbitration Agreement clearly state that Plaintiff must arbitrate any individual claims arising out of her employment or termination of employment with Defendant Lowe's LLC and its agents. (Doc. No. 11-3 at 2.) Therefore, the court will grant Defendants' motion to compel

/////

/////

/////

arbitration of Plaintiff's claims and stay this action pending the completion of arbitration.[2] *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, Section 3 of the FAA compels the court to stay the proceeding.").

**CONCLUSION**

For the reasons explained above:

1. Defendants' motion to compel arbitration of Plaintiff's claims (Doc. No. 11) is granted;

2. This action is stayed in its entirety pending the completion of arbitration of Plaintiff's claims;

3. The parties shall file a joint status report ninety (90) days from the date of entry of this order, and every 90 days thereafter, regarding the status of the arbitration proceedings; and

4. Within fourteen (14) days of the completion of the arbitration proceedings, the parties shall file a joint status report to notify the court of the arbitrator's decision and request that the stay of this case be lifted.

IT IS SO ORDERED.

Dated:   **January 29, 2025**

Dena Coggins
United States District Judge

---

[2] The court grants Defendants' motion to compel arbitration of Plaintiff's claims against both Defendants Lowe's Inc. and Lowe's LLC. "Courts applying California law have routinely found that 'when charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer those claims against the parent to arbitration . . . even if the parent is not formally a party to the arbitration agreement.'" *Marselian v. Wells Fargo and Co.*, 514 F. Supp. 3d 1166, 1172 (N.D. Cal. 2021).